UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


N.W., JR. (XXX-XX-4318)                          CIVIL ACTION NO. 12-cv-3068

VERSUS                                           JUDGE FOOTE

MICHAEL J. ASTRUE                                MAGISTRATE JUDGE HORNSBY


**REPORT AND RECOMMENDATION**

**Introduction**

N.W., Jr. ("Plaintiff") was born in 1965 and has an 11th-grade education. He worked as a restaurant cook until he was injured in a serious car accident in July 2010. Plaintiff filed a claim for social security disability benefits based on the assertion that he is disabled because of impairments caused by his injuries.

ALJ Gerald L. Meyer held a hearing and issued a written decision that Plaintiff was not disabled within the meaning of the regulations. The Appeals Council denied a request for review, making the Commissioner's decision final. Plaintiff now seeks the limited judicial review permitted by 42 U.S.C. § 405(g) based on two assignments of error: (1) the ALJ's finding that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work is not supported by substantial evidence; and (2) the ALJ erred in relying on the Medical-Vocational Guidelines because Plaintiff has nonexertional impairments. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

**A.  Medical Records**

Medical records show that Plaintiff was in a car accident in July 2010 and suffered the following injuries: perforated abdominal viscera, bilateral pleural effusions, C-6 transverse process fracture, rib fracture, hepatic (liver) laceration, spleen laceration, colonic injury with small bowel resection, and primary anastomosis.  Plaintiff was in the hospital for several days and required surgery for some of his injuries.  At a follow-up visit in August 2010, within days of his release from the hospital, Plaintiff was observed to have a limited range of motion, but he was able to perform his own activities of daily living and rated his pain at zero.  Tr. 244-45.  Plaintiff returned later that month as instructed, and he again rated his pain as zero.  Tr. 254.  By September 1, 2010 Plaintiff still had zero pain, and his range of motion was not limited.  The physician instructed that he remove his Miami J cervical

collar, but Plaintiff refused to do so at the clinic.  Plaintiff was told to return in six weeks.  Tr. 252-53.

Plaintiff returned in October 2010.  He was still performing his own activities of daily living and did not have a limited range of motion.  He did complain for the first time of pain in the abdomen, lower back, and neck that he said began months before, was off and on, and improved with the use of Lortab.  Tr. 250-51.

The Agency sent Plaintiff for a consultative examination by Dr. Clinton McAlister, an orthopedic specialist, in November 2010.  Dr. McAlister reviewed Plaintiff's medical records from LSUMC and conducted a physical examination.  Plaintiff told Dr. McAlister that he was followed at LSU in the primary care clinic and used a neck brace.  He rated his neck pain level at eight to nine, even with the use of his brace, which he said he removes only to bathe.  Plaintiff complained of pain radiating to his left shoulder and down his arm, with pain with any motion of his neck.  Plaintiff also complained of persistent back pain that he said was at the same level as his neck pain and radiated to his hips.  He also said he had persistent difficulty with pain and problems in his abdomen and difficult bowel movements.  Tr. 261-62.

Plaintiff told Dr. McAlister that he required help with his self care; his fiancee helped him shower and dress.  He admitted driving but said he did not do any household or yard work.  He said he took three or four Lortab per day.  Tr. 263.

During the physical examination, Plaintiff had some difficulty getting from the supine to sitting position, but not from sitting to standing.  Plaintiff walked with a limp on his left

but did not use any assistive device.  He was not capable of toe walking or heel walking, and he tandem walked with some difficulty.  Plaintiff had a full range of motion of the shoulders, elbows, and wrists, with good strength and stability, but there was pain in his neck area with motion of the shoulders.  Plaintiff was capable of fine manipulation, gripping, and grasping with both hands, but he did have decreased pinch and grip strength rated at 4/5.  Plaintiff exhibited significant pain associated with bending his lumbar spine, and straight-leg raises caused back pain.  He had full range of motion of the hips, knees, and ankles with good strength and stability, but some pain associated in his back with rotation of his hips.  X-rays of the spine revealed some degenerative changes but no boney or soft tissue abnormality. Tr. 263-65.

Dr. McAlister opined that, although Plaintiff was only about four months post-injury, his problems would last more than 12 months (as required by social security law to establish a disability).  He believed that Plaintiff was a valid historian, and he saw no evidence of symptom magnification.  Dr. McAlister determined that Plaintiff could perform work at the sedentary activity level, with lifting of no more than 10 pounds occasionally or frequently. Plaintiff should not have to stand or walk for more than 10 or 15 minutes at a time.  Tr. 265-66.

Plaintiff did not seek treatment from October 2010 until March 2011 (Tr. 20) when he was brought to the hospital because of concerns about suicidal ideation and worsening abdominal pain.  Plaintiff denied suicidal ideation but did complain of abdominal pain that was cramping in nature and accompanied by nausea and vomiting.  He complained of

diarrhea five to six times per day that had been chronic for three months.  He said he took three to four Aleve to help with the abdominal pain.  He was not taking any prescription medications on a daily basis.  Plaintiff was hospitalized, and his abdominal pain improved. He was given medications to treat nausea.  Plaintiff reported that he became comfortable after using an abdominal binder that was given him to treat pain associated with his hernia, for which he was to have surgery.  Plaintiff was discharged in stable condition with no new complaints.  Tr. 292-94.

At a May 2, 2011 visit prior to hernia surgery, a physician noted that Plaintiff "is tolerating a regular diet with no nausea or vomiting, having regular bowel movements, no blood in the stool, no diarrhea or constipation."  Plaintiff was ambulatory but did wear the abdominal binder at all times and avoided lifting heavy objects. Tr. 285.  The hernia surgery was performed (Tr. 281-82), and Plaintiff reported for a follow-up visit a few days later. Plaintiff was not noted to have any limited range of motion, but he complained of constant abdominal pain for the last week that he rated at eight on a 10 scale and treated with Lortab. The physician directed him to avoid heavy lifting until six weeks after the surgery.  Tr. 279-80.  Plaintiff returned a week later.  He said he was eating well and not suffering from diarrhea or constipation.  He did complain of abdominal pain related to a drain, but it was improved with the abdominal binder.  Plaintiff was told to return in about three months.  Tr. 278.

Plaintiff returned the next month, June 2011, because of suicidal ideation during booking into jail.  He denied any abdominal pain or symptoms other than having a plan in

his head.  Plaintiff was medically cleared and returned to jail with suicide precautions.  Tr. 275-76.

Plaintiff visited the hospital for arm pain on July 17, 2011.  He said the pain had worsened for three weeks, cramping if he elevated his arm, and preventing him from lifting more than five pounds.  He also reported intermittent pins/needles pain in his left hip and leg. He said he had experienced the same pain since his accident a year earlier but it had worsened over the last three weeks.  Radiological testing revealed degenerative narrowing of the foramina at C-6/C-7.  Plaintiff was discharged with a diagnosis of radiculopathy and a prescription for Lortab and Flexeril to treat muscle spasms.  Tr. 271-75.  Notes from the gastrointestinal examination indicated no nausea or tenderness.  The musculoskeletal exam indicated a full range of motion with "good grip strength in the hands, and legs that appeared muscular  and good to equal toe and heel stands on each."  Tr. 272.

### B.  Testimony

Plaintiff testified at a hearing in September 2011.  Tr. 10-22.  He said he had just undergone the last of his five surgeries related to his accident.  Plaintiff said he was still having trouble with his stomach and stayed in the bathroom often.  As for back pain, Plaintiff said that it was "just regular" before the accident but was now worse.  He said he had to stand for a few minutes before he could walk, and if he made a sudden movement it would leave a "bad kink of pain" in his back, and his legs would sometimes begin shaking.  He estimated he could stand in one spot for only 12 to 15 minutes.  He said he could sit for 30 minutes at a time, but his feet swell up, and his legs and back begin hurting.  The ALJ asked Plaintiff

how long he thought he could go during a day if he could sit and then stand up to relieve his pain as needed.  Plaintiff said he probably would not last more than an hour and a half.

Plaintiff said his neck pain shoots through his arms and makes his hands feel like they are numb all the time.  He said he still wears his neck brace and had difficulty moving his neck from side to side.  Plaintiff said he had difficulty using his hands because they will "lock up," and that he dropped a glass of water the night before the hearing when it slipped through his left hand, which he said was actually better than his right hand.  He said his fingers and hands will cramp or freeze up if he tries to grab an object like a button.

Plaintiff said he takes six to eight Aleves and Tylenol Arthritis to treat his pain.  He agreed that he had been prescribed Lortab and muscle relaxers, but he did not say whether he was taking them or explain why he was not.  He admitted that he had gone from fall 2010 until March 2011 without any treatment.  Plaintiff claimed he could not lift even five to 10 pounds because he did not have any support in the middle of his stomach due to his operations.

**Analysis**

**A. RFC Assessment**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003).  See also Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).  He found that Plaintiff had not engaged in substantial gainful work

activity since his alleged onset of disability (step one) and that he had the following severe impairments (step two) as defined by the regulations: status post-gunshot wound, resulting in hernia repair; status post-motor vehicle accident involving injury to cervical and thoracic spine, liver, spleen; and alcohol abuse.  He found that Plaintiff's impairments did not meet or equal a listed impairment (step three), which would have required a finding of disabled without regard to Plaintiff's education, work experience, or other factors.

Steps four and five ask whether the claimant has the ability to perform the demands of his past relevant work (step four) or other jobs that exist in significant numbers in the economy (step five).  Before proceeding to those steps, the ALJ must first assess the claimant's RFC by determining the most the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1520(a)(4) and 404.1545(a)(1).

Determining a claimant's RFC is the ALJ's responsibility. Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995).  "The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." Gonzales v. Astrue, 231 Fed. Appx. 322, 324 (5th Cir. 2007).  This includes the authority "to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990), quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir.1985).

Plaintiff challenges the ALJ's finding that he had an RFC to perform the demands of sedentary work, which is the least demanding category of work.  The regulations define sedentary work as work that involves lifting no more than 10 pounds at a time and

Page 8 of  13

occasionally lifting or carrying articles like docket files, ledgers, and small tools.   A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties.   A job is  sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a);  Social Security Ruling 83-10.

The ALJ discussed in detail the opinion from Dr. McAlister that concluded with the physician's opinion that Plaintiff could perform sedentary work.  Tr. 53.  The ALJ noted the lack of medical care for considerable periods of time and that Plaintiff often did not require or take any prescription medication despite his claims of excessive pain.  Tr. 53.  The ALJ also discussed Plaintiff's testimony that suggested limitations much greater than reflected in the medical records and contained an admission that Plaintiff was then taking only over-the-counter medication for relief of what he claimed was extraordinary pain.  Tr. 55.  The ALJ concluded that the record, as a whole, shows that Plaintiff may experience some of the purported symptoms but not to the degree he claimed.  The ALJ assessed the testimony as "an overstatement of his subjective symptoms and limitations" that was "not supported by the objective medical evidence."  He noted the lack of treatment, medications, or limitations by physicians that would be consistent with the degree of incapacity claimed by Plaintiff. Tr. 56.

The medical records support the ALJ's decision.  There were times when Plaintiff suffered significant pain, but it appears the pain was largely resolved by the hernia operation and other medical care.  Plaintiff complained in later visits that he had suffered various neck,

back, and arm pain since his accident, but there was no indication that Plaintiff had complained of these problems at any of his many medical visits soon after the accident.  The records from that time often reflect a lack of other complaints and good results of musculoskeletal examinations.  The record indicates that Plaintiff did experience diarrhea and other stomach problems, but they appeared to have been temporary and largely resolved by the time of the hernia operation.  The constant degree of problems claimed by Plaintiff in his testimony are not supported by the many observations in the medical record that Plaintiff was not having any troubles in that regard.  The ALJ made a reasonable assessment of the evidence before him, and much of it was based on the credibility of Plaintiff.

An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).  Another person may have come to a different conclusion based on the same record, but the conclusion reached by the ALJ was a reasonable one and it was supported by substantial evidence in the record and adequately explained in his written decision.  An important piece of evidence was Dr. McAlister's report, in which he accepted as true much of Plaintiff's complaints yet still opined that Plaintiff could perform sedentary work.  And it is not as if the ALJ found Plaintiff fully capable of work.  He found that Plaintiff could perform only the least demanding category of work, sedentary work, which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like files or small tools.  Walking and

standing is not required more than a total of two hours per eight-hour workday.  There were credible evidentiary choices in the record that supported the ALJ's assessment of Plaintiff's RFC, so the finding must be affirmed.

### B. The Guidelines

Plaintiff's second assignment of error is that the ALJ improperly relied upon the Medical Vocational Guidelines.  At the fifth step, determining whether Plaintiff is able to perform work that is available in the national economy, the Commissioner may meet his burden of proof by looking to the Guidelines found at 20 C.F.R. §404, Sub-part P, Appendix 2.  The Commissioner may rely exclusively on the Guidelines if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly affect his RFC.  Id. § 404.1569; Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If nonexertional impairments do significantly affect the plaintiff's RFC, the Commissioner may look to the Guidelines for guidance but must also look to expert vocational testimony or other similar evidence to meet his burden of proving that such jobs exist.  Fraga, supra

Rule 201.19 in Table No. 1 of the Guidelines states that a person of Plaintiff's age, education, and work experience with the ability to perform a full range of sedentary work is not disabled.  The ALJ relied exclusively on that rule to satisfy his step-five burden.  Tr. 56-57.  Plaintiff claims this was inappropriate because he suffers from nonexertional limitations, which should have compelled the ALJ to seek testimony from a vocational expert or gather other similar evidence to satisfy the step-five burden.

Page 11 of  13

Plaintiff points to the evidence of pain in his lower back, difficulty moving his neck and shoulders, and decreased grip strength in his hand. "Exertional limitations or restrictions affect an individual's ability to meet the seven strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), while nonexertional limitations or restrictions affect an individual's ability to meet the nonstrength demands of jobs (all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions)." Social Security Ruling 96-4p. "[S]ymptoms in themselves are neither exertional nor nonexertional. An individual's symptoms, however, can cause limitations or restrictions that are classified as exertional, nonexertional, or a combination of both. For example, pain can result in an exertional limitation if it limits the ability to perform one of the strength activities (e.g., lifting), or a nonexertional limitation if it limits the ability to perform a nonstrength activity (e.g., fingering or concentrating)." Id.

The ALJ rejected Plaintiff's testimony about the extent of his pain, grip strength, and other similar symptoms. Plaintiff's testimony about his hands locking up was particularly unsupported by the medical evidence, which showed only slightly reduced grip and no other hand problems. Given that rejection, the ALJ acted appropriately in relying on the Guidelines. Plaintiff has not demonstrated how the impairments accepted by the ALJ would result in nonexertional limitations that would prevent Plaintiff from performing the full range of mere sedentary work.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of October, 2013.

Mark L. Hornsby
U.S. Magistrate Judge